1

2

3

4

5

6

7

8

9                      IN THE UNITED STATES DISTRICT COURT

10                       FOR THE DISTRICT OF OREGON

11   DAVID PHELPS and MAX LUGAUER    )
     III, Individually and On        )
12   Behalf of All Others Similarly) 
     Situation,                      )
13                                   )        No. CV-08-387-HU
               Plaintiffs,           )
14                                   )
          v.                         )
15                                   )
     3PD, INC., a Georgia cor-       )        OPINION & ORDER
16   poration,                       )
                                     )
17               Defendant.          )
     ─────────────────────────────── )

18

19   Steve D. Larson
     David F. Rees
     STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
20   209 S.W. Oak Street, Fifth Floor
     Portland, Oregon 97204
21

     Robert C. Schubert
22   Miranda P. Kolbe
     SCHUBERT & REED LLP
23   Three Embarcadero Center, Suite 1650
     San Francisco, California 94111
24

          Attorneys for Plaintiffs
25

     John A. Anderson
26   ANDERSON & YAMADA, P.C.
     1515 S.W. Fifth Avenue, Suite 1020
27   Portland, Oregon 97201

28   / / /


     1 - OPINION & ORDER

James H. Hanson
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1500
Indianapolis, Indiana 46204

Adam C. Smedstad
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
30 West Monroe Street, Suite 600
Chicago, Illinois 60603-2427

Attorneys for Defendant

HUBEL, Magistrate Judge:

Plaintiffs David Phelps and Max Lugauer bring wage and other claims against defendant 3PD, Inc., based on the allegation that defendant purposefully misclassified plaintiffs, and a class of similarly situated individuals who provide home delivery services for defendant, as "independent contractors," when in fact, according to plaintiffs, they were defendant's employees.

Plaintiffs move for certification of a class on certain claims under Federal Rule of Civil Procedure 23.    They also seek appointment of Phelps and Lugauer as class representatives, and appointment of the San Francisco law firm of Schubert Jonckheer Kolbe & Kralowec LLP, and local law firm Stoll Stoll Berne Lokting & Shlachter PC, as class counsel.    All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).    I grant the motion.

BACKGROUND

Plaintiffs are former delivery drivers for defendant and were classified as independent contractors during their tenure. Plaintiffs bring seven claims for relief.    An element of each claim, although not the only element, is the issue of whether plaintiffs were properly classified by defendant as independent

2 - OPINION & ORDER

contractors or were misclassified because the relationship was actually one of employee-employer. It appears that the majority of defendant's home delivery business in Oregon was performing deliveries for Home Depot stores. Additional facts are discussed below.

I. Claims

Plaintiffs bring the following claims:

(1) Illegal deductions from wages under Oregon Revised Statute § (O.R.S.) 652.610. Plaintiffs allege they were employees under O.R.S. 652.310. Plaintiffs contend that defendant deducted vehicle expenses, cargo claims, and insurance claims from their pay in violation of O.R.S. 652.610 because plaintiffs did not expressly and freely give written consent to such deductions and the deductions were not made in response to a valid wage assignment or deduction order. Plaintiffs further allege that the deductions were not made for their benefit and defendant did not provide plaintiffs with advance notice of such amounts, reasons, or documentation to justify the deductions. Am. Compl. at ¶¶ 63-67.

(2) Rescission of Agreements. Plaintiffs contend that the contracts signed by each driver purporting to establish an independent contractor relationship, are void as against public policy and thus unenforceable because they fail to recognize the proper employment status of plaintiffs and therefore, deny them the legally cognizable benefits of employment. Am. Compl. at ¶¶ 68-73.

(3) Unjust enrichment/quantum meruit. Plaintiffs contend that by misclassifying them as independent contractors, and by improperly requiring them to pay defendant's ordinary business expenses, defendant has been unjustly enriched. Plaintiffs contend

3 - OPINION & ORDER

they are entitled to restitution of all the business expenses they were required by defendant to bear, and for the fair value of the services they provided as employees. Am. Compl. at ¶¶ 74-76.

(4) Declaratory Relief. Plaintiffs contend that an actual controversy has arisen between plaintiffs/class members and defendant relating to (a) whether defendant unlawfully misclassified plaintiffs and the members of the class as independent contractors and thus denied them the common benefits of employee status such as wages, holiday pay, workers' compensation, unemployment insurance, income tax withholding, and meal, break, and rest periods; (b) whether defendant has unlawfully failed to timely pay benefits and compensation owing to plaintiffs/class members whose employment with defendant ended; (c) what amounts plaintiffs and the class members are entitled to receive in compensation and benefits; (d) what amounts plaintiffs and the class members are entitled to receive in interest on unpaid compensation due and owing; and (e) what amounts plaintiffs and the class members are entitled to receive from defendant in statutory penalties and interest. Plaintiffs seek entry of a declaratory judgment which declares defendant's practices unlawful and which provides for recovery of all sums determined by the court to be owed by defendant to plaintiff and the class members. Am. Compl. at ¶¶ 77-79.

(5) Injunctive Relief. Plaintiffs contend that defendant will continue to misclassify plaintiffs and the class members as independent contractors and unlawfully deny them the common benefits of employee status unless enjoined from doing so. They allege they have no adequate remedy at law for defendant's

4 - OPINION & ORDER

continued misclassification and unlawful refusal to pay all compensation and benefits.  They further assert that they have a reasonable fear that defendant will retaliate against class members for attempting to enforce their rights under Oregon law.  Thus, they seek permanent injunctive relief enjoining defendant from engaging in the unlawful practices alleged.  Am. Compl. at ¶¶ 80-84.

(6)  Penalty Wages.  Plaintiffs allege that as a result of the violations of O.R.S. 652.610 as asserted in plaintiffs' first claim, defendant has violated O.R.S. 652.140 by failing to timely pay wages owed to terminated employees, and thus, defendant owes penalty wages under O.R.S. 652.150.  Am. Compl. at ¶¶ 85-88.

(7)  Fraud.  Plaintiffs allege that defendant knew, or recklessly disregarded, the improper designation of its drivers as independent contractors in the contracts with its drivers.  Plaintiffs contend that through the driver agreements and other actions as alleged in the Amended Complaint, defendant intentionally or recklessly misled plaintiffs and the members of the class as to their employment status for the purpose of realizing unjust profits from their work and/or to avoid paying for its own operating costs and payroll taxes owed to the state and federal government.  Plaintiffs assert that defendant knew that the material representations made to plaintiffs and class members in the agreements concerning their employment status, and the concealment and/or non-disclosure of material facts from plaintiffs and class members concerning their employment status and their corresponding obligation to assume responsibility for all of their "own" employment-related expenses, including, but not limited to,

5 - OPINION & ORDER

purchasing or leasing, operating and paying to maintain expensive trucks, were false and fraudulent. Plaintiffs contend that defendant intended to and did induce plaintiffs and the class members to reasonably and justifiably rely to their detriment on the false and fraudulent representations made to them by defendant in the agreements concerning their employment status and obligation to assume responsibility for employment-related expenses, including but not limited to, purchasing or leasing, operating and maintaining expensive trucks, and that plaintiffs suffered damage as a direct and proximate result. Am. Compl. at ¶¶ 89-93.

II.  The Motion

Plaintiffs seek certification of a class with respect to their claims for illegal deductions from wages, rescission, unjust enrichment, and fraud, defined as follows:

> All individuals who (1) entered into a contract with 3PD to perform home delivery services either on his or her own behalf or on behalf of an entity, and (2) performed such home delivery services for 3PD in the State of Oregon during the period March 26, 2002 through the present (the "Class Period").

Pltfs' Mtn at p. 2.

They further seek certification of a subclass with respect to their penalty wage claim, defined as follows:

> All individuals who (1) entered into a contract with 3PD to perform home delivery services either on his or her own behalf or on behalf of an entity, (2) personally performed such home delivery services for 3PD in the State of Oregon during the period March 26, 2002 through the present, and (3) whose employment with 3PD was terminated during the period March 26, 2002 through the present.

Id.

As noted above, plaintiffs seek appointment of Phelps and Lugauer as class representatives, and further seek appointment of

6 - OPINION & ORDER

1  current counsel as class counsel.

2                              STANDARDS

3       A suit may go forward as a class action if:

4       (1) [T]he class is so numerous that joinder of all
        members is impracticable;
5
        (2) there are questions of law or fact common to the
6       class;

7       (3) the claims or defenses of the representative parties
        are typical of the claims or defenses of the class; and
8
        (4) the representative parties will fairly and adequately
9       protect the interests of the class.

10 Fed. R. Civ. P. 23(a).  In addition to satisfying the four Rule

11 23(a) criteria, a class action may be maintained only if one of the

12 Rule 23(b) criteria is met.   Fed. R. Civ. P. 23(b).   Here,

13 plaintiffs rely on Rule 23(b)(3), discussed below.[1]

14      The decision to grant or to deny class certification is within

15 the trial court's discretion.  Armstrong v. Davis, 275 F.3d 849,

16 871, n.28 (9th Cir. 2001) (Rule 23 "provides district courts with

17 broad  discretion  to  determine  whether  a  class  should  be

18 certified[.]").  It is plaintiffs' burden to establish compliance

19 with Rule 23.  Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718,

20 725 (9th Cir. 2007) (party seeking class certification bears burden

21 of demonstrating that Rule 23 criteria are met).

22      A class may be certified only if the court is satisfied "after

23 _____

24        [1]  Plaintiffs do not seek class certification of the
   declaratory and injunctive relief claims and thus, do not rely on
25 Rule 23(b)(2) which allows for the maintenance of a class action
   upon satisfaction of all four Rule 23(a) criteria and a showing
26 that "the party opposing the class has acted or refused to act on
   grounds that apply generally to the class, so that final
27 injunctive relief or corresponding declaratory relief is
   appropriate respecting the class as a whole[.]"
28

7 - OPINION & ORDER

1  a rigorous analysis that the prerequisites of Rule 23(a) have been
2  satisfied." Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th
3  Cir. 1992) (internal quotation omitted).  A class may be certified
4  as to one or more claims without certifying all of the claims
5  alleged in the complaint.  Fed. R. Civ. P. 23(c)(4).

6      For purposes of ruling on a motion to certify a class, the
7  court takes the substantive allegations of the complaint as true.
8  In re Coordinated Pretrial Proceedings in Petroleum Prods.
9  Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982).  However,
10 the court is also required to consider the nature and range of
11 proof necessary to establish those allegations.  Id.

12     The determination of class certification does not require or
13 permit a preliminary inquiry into the merits.  Blackie v. Barrack,
14 524 F.2d 891, 901 n. 17 (9th Cir. 1975).  An extensive evidentiary
15 showing by the plaintiff is not required as long as the court has
16 sufficient material before it to determine the nature of the
17 allegations and to rule on compliance with the requirements of Rule
18 23.  Id.

19                          DISCUSSION
20 I.  Choice of Law

21     Defendant argues that based on a choice of law provision in
22 the contracts signed by its drivers, Georgia law applies to any
23 claim arising out of the contracts.  Plaintiffs make several
24 arguments in opposition to the application of Georgia law,
25 including that the choice of law provision is very narrow, none of
26 plaintiffs' claims arise out of the contracts, the determination of
27 who is and is not an employee cannot be divorced from the context
28 in which that determination is to be applied, and that the

8 - OPINION & ORDER

application of Georgia law to the question of whether the drivers are employees or independent contractors would violate fundamental Oregon policies.

I do not resolve the choice of law dispute at this juncture. Under Oregon law, courts generally use a common law "right to control" test in determining the status of a worker. Perri v. Certified Languages Int'l, LLC, 187 Or. App. 76, 82, 66 P.3d 531, 535 (2003). "The principal factors under that test are (1) the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." Id. No one factor is dispositive; they are to be viewed in their totality. Id.

Under Georgia law, where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract. Larmon v. CCR Enters., 285 Ga. App. 594, 595, 647 S.E. 2d 306, 307 (2007). If the contract specifies that the employee's status is that of independent contractor, but at the same time provides that he shall be subject to any rules or policies of the employer which may be adopted in the future, no such presumption arises. Id. Finally, if the presumption applies, to rebut the presumption that a contract creates an independent contractor relationship, the factfinder must determine whether there was, in fact, a right to control the time, manner, and method of the performance of the work. Cotton States Mut. Ins. Co. v. Kinzalow, 280 Ga. App. 397,

9 - OPINION & ORDER

402, 634 S.E.2d 172, 176 (2006).

As can be seen from these cases, while Georgia treats the issue slightly differently than Oregon in cases where there is a signed contract acknowledging an independent contractor relationship, facts regarding defendant's right to control plaintiffs and the putative class members are relevant under either state's law. For the purposes of this motion, the issue is whether plaintiffs have common facts to support their claims, which, under either state's law, will involve proof of the "right to control." Thus, because the difference in law is not material to the instant motion, I do not decide the issue.

II.  Rule 23(a)

A.  Numerosity

A class must be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). During the class period of March 26, 2002, to present, defendant classified 111 drivers and/or business entities created by drivers, in Oregon, as independent contractors. Exh. 1 to Kolbe Declr. (Deft's Resp. to Interrog. No. 4). Plaintiffs state that at least 92 of the 111 drivers drove pursuant to their own contract with defendant. Plaintiffs also state that at least 70 of the drivers have terminated their employment with defendant. Dotts Declr. at ¶ 6.

Cases from the Ninth Circuit and this district support a conclusion that 111 potential class members satisfy the numerosity requirement. E.g., Jordan v. County of Los Angeles, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (stating inclination "to find the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71," and

10 - OPINION & ORDER

listing thirteen cases in which courts certified classes with fewer than 100 members), vacated on other grounds, 459 U.S. 810 (1982); Oregon Laborers-Employers Health & Welfare Trust Fund v. Phillip Morris, 188 F.R.D. 365, 372 (D. Or. 1998) ("This district has held that, as a 'rough rule of thumb,' approximately forty members is sufficient to satisfy the numerosity requirement.") (quoting Wilcox Dev. Co. v. First Interstate Bank of Oregon, N.A., 97 F.R.D. 440, 443 (D. Or. 1983)).

Defendant offers no opposing argument on the numerosity issue. Plaintiffs satisfy this Rule 23(a) element.

B.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit explained in a 1998 case that

> Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

"[T]here need be only a single issue common to all members of the class."  Oregon Laborers-Employers Trust, 188 F.R.D. at 373 (internal quotation omitted).  "[W]hen the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected."  Id. (internal quotation omitted).

Plaintiffs argue that they satisfy the commonality element because of the common proof of defendant's right of control over

11 - OPINION & ORDER

1  the drivers.  I agree.

2      Plaintiff has provided a substantial amount of exceptionally
3  detailed evidence regarding the relationship between the drivers
4  and defendant.  The evidence includes copies of various contracts
5  used with the drivers, declarations of two of defendant's regional
6  managers, and declarations of nine drivers.  Several exhibits are
7  appended to each declaration.

8      It is important to reiterate that a decision on class
9  certification is not a decision on the merits of the claims.
10  Plaintiffs' evidence demonstrates that the evidence on right to
11  control is overwhelmingly common evidence.  However, I do not
12  discuss here many of the details of the evidence plaintiffs submit
13  because the relevant question at this point is whether the evidence
14  plaintiffs will later rely on in support of their claims is or is
15  not common.  I need not, and do not, decide what that evidence
16  shows in regard to the merits of each claim.

17      Plaintiffs provide evidence of a common practice used by
18  regional managers in recruiting potential drivers.  Plaintiffs also
19  provide contracts used by defendant with its drivers, both for
20  driving services and for the lease of trucks by defendant to its
21  drivers.  Initially, the driving service contracts were called
22  Driver Service Agreements (DSAs), used from March 2002 to September
23  2006, with drivers entering into these under their own names.

24      Beginning in September or October 2006, drivers entered into
25  agreements called Independent Contractor Operating Agreements
26  (ICOA).  With these, the driver's limited liability company or
27  corporation was the actual party to the contract.  In 2006,
28  defendant informed its drivers that it would enter into new

12 - OPINION & ORDER

contracts, the ICOAs, and would do so only with business entities that had been organized as a corporation or a limited liability company. Defendant further informed its drivers that any who had not already formed a corporation or a limited liability company and who desired to continue to work with defendant, needed to form a business entity to do business with defendant and execute a new ICOA with defendant on behalf of that business entity.

In February 2008, defendant began using a new contract called a Delivery Service Agreement, referred to by plaintiffs in this motion as the "2008 Contract."

All three driving service contracts were standard form contracts and were used with all drivers.

A majority of the drivers also signed vehicle lease and maintenance agreements with defendant, or beginning in 2008, with Cure, defendant's business partner, for a vehicle to be used while driving for defendant. Again, these were standard form contracts. All drivers who entered into such contracts were subject to the same provisions for deductions for lease and maintenance expenses.

Several provisions in the driver agreements, which are common to all drivers, and the lease agreements, which are common to a majority of the drivers, are relevant to the right to control issue. These provisions include standards of service, employment of others to assist the driver, purchase of insurance coverage, preparation of driver logs and other documents, placement of marks or logos on trucks, use of trucks for business other than driving for defendant, and termination.

Common evidence outside of the written agreements is also relevant to the right to control issue. Testimony from the

13 - OPINION & ORDER

regional managers and several drivers indicates that plaintiffs possess common evidence regarding delivery schedules, uniforms, appearances of vehicles, monitoring of the quality of service provided by the drivers, training of new and secondary drivers, and requirements for vehicle maintenance.

One area where the evidence is not common across all class members is in compensation. Drivers were paid either a flat weekly rate, or a set commission. Drivers who made deliveries for Home Depot "metro" stores, meaning those located in the Portland area, were paid by delivery. "Remote" store drivers were paid a fixed amount each week to provide exclusive service to those Home Depot stores, regardless of how many deliveries the drivers actually made. Phelps and Lugauer were remote store drivers.

A common question of law underlies all of plaintiffs' claims - whether the drivers are independent contractors or employees. The evidence shows that this question will be answered with largely common evidence relevant to the issue of defendant's right to control the drivers. Again, this is not the time to decide what that common evidence shows. Rather, the issues are whether the evidence is relevant to the right to control, and whether it is common evidence.

The driver contracts and the vehicle lease agreements, both of which have provisions relevant to defendant's right to control, are common evidence. Other common evidence is offered through the testimony of the regional managers and drivers on issues that are also relevant to the right to control such as driver schedules, uniforms, decals, hiring of other drivers, provision and maintenance of equipment, and termination. While the compensation

14 - OPINION & ORDER

1  falls into two categories, the evidence as to each category appears
2  to be common.

3      Based on the evidence in this record, defendant appears to
4  have handled its relationships with its drivers uniformly, with the
5  exception of the two separate compensation methods.  Still, the
6  majority of the evidence is common.  Plaintiffs meet the
7  commonality requirement.

8      C. Typicality

9      Typicality requires that "the claims or defenses of the
10 representative parties are typical of the claims or defenses of the
11 class." Fed. R. Civ. P. 23(a)(3).  A class representative's claims
12 "are typical if they are reasonably co-extensive with those of
13 absent class members; they need not be substantially identical."
14 Hanlon, 150 F.3d at 1020.  Judge Jones stated in Sorenson v.
15 Concannon, 893 F. Supp. 1469 (D. Or. 1994), that "a plaintiff's
16 claim is typical if it arises out of the same event or practice or
17 course of conduct that gives rise to the claims of other class
18 members and his or her claims are based on the same legal theory."
19 Id. at 1479 (internal quotation omitted).

20     Plaintiffs argue that they are typical of the class they seek
21 to represent because, like almost every other class member, they
22 signed mandatory boilerplate contracts, were required to be
23 available to make deliveries for defendant six days per week and up
24 to ten hours per day, were required to make all deliveries assigned
25 to them, were required to wear a uniform with defendant's logo on
26 it and to brand their vehicles as defendant saw fit, and were
27 regularly monitored and threatened with termination just like all
28 other class members.  Thus, they contend, their claims are typical

15 - OPINION & ORDER

1  of those of the class.

2      Defendant suggests that plaintiffs' claims are not typical
3  because they have no knowledge of certain facts regarding metro
4  store drivers, such as how those drivers had their work scheduled,
5  the number of deliveries they made, and whether the metro drivers
6  were paid more or less than plaintiffs.  As noted above, some
7  degree of individuality is tolerated.

8      In a 1991 opinion, Judge Redden explained that

9      [t]he typicality requirement is met when there is a lack
       of   adversity   or   antagonism   between   the   class
10     representative and absent class members "over the very
       issue in litigation," and when it is clear the plaintiff
11     will give the action "vigorous representation."

12  Steiner v. Tektronix, Inc., No. CV-90-587-RE, 1991 WL 57033, at *2
13  (D. Or. Feb. 7, 1991).  Additionally, he explained, "factual
14  variations are not fatal to a proposed class when the claims arise
15  out of the same remedial and legal theory."  Id. (internal
16  quotation omitted).

17      Here, any variation in payment and/or scheduling of deliveries
18  between the remote drivers, like Phelps and Lugauer, and the metro
19  drivers, is insufficient to render Phelps's and Lugauer's claims
20  atypical of those of the putative class.

21      Defendant also raises an argument about two particular claims.
22  For the fraud claim, defendant contends that Phelps's and Lugauer's
23  claims are not typical because both testified they knew they would
24  be independent contractors and understood they would be responsible
25  for their own expenses.  As I understand the claim, plaintiffs
26  contend that the agreements signed by the drivers contained
27  misrepresentations and omitted other information.  As described
28  more fully below in the section discussing Rule 23(b)(3),

16 - OPINION & ORDER

plaintiffs' awareness of their status and expenses is not relevant to this particular fraud claim. With the claim as presently framed, it is immaterial that each driver understood the agreement to recite that the driver was an independent contractor or that the driver was responsible for his expenses which would be deducted by defendant. I do not find Phelps's and Lugauer's fraud claims to be atypical.

The typicality issue raised by defendant in regard to the O.R.S. 652.610 claim is based on defendant's assertion that plaintiffs authorized the deductions. However, as explained below in the context of the Rule 23(b)(3) discussion, such authorization is irrelevant because the claim, as described by plaintiffs, assumes that each individual driver authorized the deductions. Plaintiffs assert that as a matter of law, the authorizations are invalid. Thus, the fact that Phelps and Lugauer both testified that they authorized the deductions does not make Phelps and Lugauer atypical for purposes of the O.R.S. 652.610 claim.

Plaintiffs satisfy the typicality element.

D. Adequacy

Rule 23(a)(4) requires the class representative(s) to fairly and adequately protect the interests of the class. This factor requires: (1) that the proposed representative plaintiffs have no conflicts of interest with the proposed class; and (2) that plaintiffs are represented by qualified and competent counsel. See Hanlon, 150 F.3d at 1020; see also Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978) (describing two criteria for determining adequacy of representation: "[f]irst, the named representatives must appear able to prosecute the action

17 - OPINION & ORDER

vigorously   through   qualified   counsel,   and   second,   the
representatives must not have antagonistic or conflicting interests
with the unnamed members of the class.").

Plaintiffs argue that their interests are the same as the
class as a whole.  Both worked as contract drivers for defendant
and were classified as independent contractors, as were all other
potential class members.  Both have willingly sat for depositions
and have each already demonstrated that they will work to benefit
the class through pursuit of their own goals.

Plaintiffs state that they have retained competent attorneys
with extensive experience in the prosecution of class actions
similar to those brought here.  Kolbe Declr. at ¶ 3; Exh. 71 to
Kolbe Declr; Rees Declr. at ¶¶ 2-4.

Defendant does not challenge the evidence of adequacy other
than to argue that plaintiffs, as former employees, cannot
represent the class on the injunctive or declaratory relief claims.
But, because plaintiffs do not seek certification of those claims
at this time, their ability to adequately represent the class on
those claims is not at issue.  Plaintiffs have met their burden
under Rule 23(a)(4)'s adequacy requirement.

II.  Rule 23(b)

If all of the Rule 23(a) criteria are met, plaintiffs still
must establish that they meet the requirements of Rule 23(b)(1),
(2), or (3).  Here, as noted above, plaintiffs rely on Rule
23(b)(3) which provides that

> [a] class action may be maintained if Rule 23(a) is
> satisfied and if:
>
> * * *

18 - OPINION & ORDER

(3)  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

> (A)  the class members' interest in individually controlling the prosecution or defense of separate actions;
>
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

"A Rule 23(b)(3) class is appropriate when a class action is superior to other available methods for adjudication of the controversy and common questions predominate over the individual ones." Molski v. Gleich, 318 F.3d 937, 947 n.10 (9th Cir. 2003) (internal quotation omitted).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).

> Rule 23(b)(3) focuses on the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

Hanlon, 150 F.3d at 1022 (internal quotation omitted).

Plaintiffs need not establish that there are no individual issues, only that the class issues predominate and that a class action is superior.  See Local Joint Exec. Bd. of

19 - OPINION & ORDER

1   Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d
2   1152, 1163 (9th Cir. 2001) (concluding that "given the number and
3   importance of the common issues," some variation among the
4   individual employees in proving damages, as well as some potential
5   difficulty in proof in demonstrating that they would have worked on
6   a holiday, was not "enough to defeat predominance under Rule
7   23(b)(3)."); see also Kamar v. Radio Shack Corp., 254 F.R.D. 387,
8   399 (C.D. Cal. 2008) ("the existence of certain individualized or
9   deviating facts will not preclude certification if most class
10  members were subjected to a company policy in a way that gives rise
11  to consistent liability or lack thereof. . . . Individual issues do
12  not render class certification inappropriate so long as such issues
13  may effectively be managed") (internal quotation omitted).

14      As defendant notes, the issue of whether defendant's drivers
15  were independent contractors or employees is not, by itself, a
16  claim.  It is an element of each of plaintiffs' claims, but the
17  issue is not alone determinative of any one claim.  As a result,
18  defendant argues that each claim requires the resolution of issues
19  individual to each putative class member and thus, the individual
20  issues in the case predominate over the common issue of driver
21  status.  I address defendant's argument by looking at what is
22  required to prove each claim in this case.

23      A.  Fraud Claim

24      To state a fraud claim under Oregon law, plaintiffs must plead
25  and prove:

26          (1)  a  representation;  (2)  its  falsity;  (3)  its
27          materiality; (4) the defendant's knowledge of its falsity
            or ignorance of its truth; (5) the defendant's intent
28          that  the  representation  should  be  acted  on  by  the
            plaintiff . . .; (6) the plaintiff's ignorance of its

20 - OPINION & ORDER

1  falsity; (7) the plaintiff's reliance on its truth; (8)
   the plaintiff's right to rely on the representation; (9)
2  and the plaintiff's resulting injury.

3  Smallwood v. Fisk, 146 Or. App. 695, 699, 934 P.2d 557, 559 (1997).

4      The fraud claim as alleged by plaintiffs is set out at the

5  beginning of this Opinion.  It is clear that the claim is based on

6  the alleged misrepresentations and/or omissions in the various form

7  contracts defendant drafted and which each putative class member

8  signed.  I agree with plaintiffs that there is no dispute that each

9  class member thus received and acknowledged defendant's alleged

10 misrepresentations regarding their employment status. See In re

11 FedEx Ground Package Sys., Inc. Employmt Pracs Litig., 2008 WL

12 5263376, at *4 (N.D. Ind. Dec. 16, 2008) ("the Minnesota plaintiffs

13 present evidence that FedEx required all of its drivers to sign a

14 standard operating agreement acknowledging their employment status

15 as independent contractors.  Therefore, . . . there is no question

16 as to whether each class member received FedEx's representations").

17     Given that the fraud claim is based on the form contracts,

18 there is common evidence on several claims elements:  the making of

19 a representation (or the omission of information), its falsity, the

20 defendant's knowledge of its falsity or ignorance of its truth, and

21 the defendant's intent that the representation should be acted on

22 by the plaintiff.

23     Several of the other elements may be appropriately understood

24 as "reasonable reliance":  materiality of the representations or

25 omissions,  the  plaintiff's  ignorance  of  the  falsity,  the

26 plaintiff's reliance on the truth, and the plaintiff's right to

27 rely on the representation.  These elements are all different

28 aspects of whether any reliance by plaintiffs was reasonable.  I

21 - OPINION & ORDER

agree with defendant that this reasonable reliance issue may be unique to each individual plaintiff.[2] Each individual's damages will also be an individual assessment. I acknowledge the cases cited by defendant which suggest that because of the reliance issue, fraud claims may not be disposed to class treatment. E.g., In re Hotel Tel. Charges, 500 F.2d 86, 89 (9th Cir. 1974) (refusing to certify a class for a state fraud claim because of individual issues as to, inter alia, individual reliance on any alleged misrepresentation); Steiner, 1991 WL 57033, at *4 (denying class certification on state law negligent misrepresentation claim because of the concern that individual questions of reliance preluded a finding of commonality).

However, the Ninth Circuit has also affirmed class certification of a fraud claim "stemming from a common course of conduct." In re First Alliance Mtg. Co., 471 F.3d 977, 990 (9th Cir. 2006). The court first quoted from the Advisory Committee

---

[2] However, because of the nature of this particular fraud claim, the differences in the reasonableness of each class member's reliance may be very slight. Given that Lugauer and Phelps each admitted that they knew they were signing contracts which labeled them as independent contractors, I suspect other class members also were aware of the designation when they signed the contracts. The fraud here is not grounded in a misrepresentation of fact in the sense that drivers were, say, classified by the contracts as employees, but then treated as independent contractors. Rather, the alleged fraud is a misrepresentation as to the law in the sense that they were told they were independent contractors and they believed the express words of the contracts in that regard, but they argue that the facts regarding control show they were actually employees. I have previously concluded that a similar claim which alleged that the defendant falsely and knowingly misrepresented the legal status of the plaintiffs' employment classification, stated a claim under Oregon law. Travis v. Knappenberger, 204 F.R.D. 652, 660 (D. Or. 2001).

22 - OPINION & ORDER

notes to Rule 23:

> The Advisory Committee on Rule 23 considered the function of the class action mechanism in the context of a fraud case and explained that while a case may be unsuited for class treatment "if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed," a "fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action...."

Id. (quoting Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendments, Subdivision (b)(3)).

Next, the court explained that

> [c]lass treatment has been permitted in fraud cases where, as in this case, a standardized sales pitch is employed. In In re American Continental Corp./Lincoln Savings & Loan Securities Litigation, 140 F.R.D. 425 (D. Ariz. 1992), the court correctly rejected a "talismanic rule that a class action may not be maintained where a fraud is consummated principally through oral misrepresentations, unless those representations are all but identical," observing that such a strict standard overlooks the design and intent of Rule 23. Id. at 430. Lincoln Savings involved a scheme that included, among other things, the sale of debentures to individual investors who relied on oral representations of bond salespersons who in turn had received from defendants fraudulent information about the value of the bonds. The Lincoln Savings court focused on the evidence of a "centrally orchestrated strategy" in finding that the "center of gravity of the fraud transcends the specific details of oral communications." Id. at 430-31. As the court explained:

> > [T]he gravamen of the alleged fraud is not limited to the specific misrepresentations made to bond purchasers.... The exact wording of the oral misrepresentations, therefore, is not the predominant issue. It is the underlying scheme which demands attention. Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser to prove the nucleus of the alleged fraud again and again.

> Id. at 431; see also Schaefer v. Overland Express Family of Funds, 169 F.R.D. 124, 129 (S. D. Cal.1996) (citing Lincoln Savings for the proposition that representations made to brokers or salesmen which are intended to be communicated to investors are sufficient to warrant class standing, even where the actual representations to

23 - OPINION & ORDER

1    individuals varied). The Borrowers' allegations of First
2    Alliance's fraud fit comfortably within the standard for
     class treatment.

3    Id. at 991.

4         In this case, because the fraud claim is based on alleged

5    misrepresentations and concealment of material facts in the

6    boilerplate form contracts drafted by defendant and which were

7    uniformly used with each driver, the common questions predominate

8    over any individual questions related to reasonable reliance and

9    damages.

10        B.   Statutory Wage Claims

11        Defendant argues that the statutory wage claims cannot be

12   resolved on a class basis. Specifically, defendant argues that the

13   O.R.S. 652.610 claim requires that each plaintiff demonstrate that

14   the plaintiff did not expressly and freely consent to the

15   deductions and that the deductions were not for the benefit of the

16   plaintiff.

17        Under the statute, an employer may not make deductions from an

18   employee's wages unless one of six conditions is met.   O.R.S.

19   652.610(3).  Thus, initially, plaintiffs must show that they were

20   employees, that the amounts they were paid were wages, and that

21   there were deductions made.  The evidence on these issues is common

22   evidence because of defendant's uniform treatment of all drivers in

23   regard to classification, payments made, and deductions made.  If

24   plaintiffs prevail on these issues, then deductions may not be made

25   unless one of the six exceptions to liability is established.

26        Defendant relies on the liability exception in O.R.S.

27   652.610(3)(b) which allows an employer to make deductions from an

28   employee's wages when "[t]he deductions are authorized in writing

24 - OPINION & ORDER

1    by the employee, are for the employee's benefit, and are recorded
2    in the employer's books."

3        Plaintiffs argue that common evidence is relevant to this
4    exception. Rather than an individualized inquiry into whether each
5    employee signed an agreement with defendant authorizing the
6    deductions, plaintiffs contend that the relevant question will be
7    a legal one: whether someone who has been determined to be an
8    employee can ever authorize deductions of the employer's business
9    expenses within the meaning of O.R.S. 652.610 pursuant to an
10   agreement in which the worker is labeled an independent contractor.
11   As plaintiffs state, "[i]n other words, it is a common legal
12   question as to whether a worker can validly authorize a deduction
13   from his or her wages pursuant to a contract that labels her as an
14   independent contractor (who ostensibly would not have rights under
15   ORS 652.610 to waive)." Pltfs' Reply Mem. at p. 22.

16       I agree with plaintiffs. The claim as framed by plaintiffs
17   does not require an individualized inquiry into each putative class
18   member's authorization of the deductions. Because of the uniform
19   practice of defendant in regard to signed agreements characterizing
20   the drivers as independent contractors and defendant's uniform
21   practice of deducting certain sums from the monies earned by the
22   drivers, the legality of the authorization will be a classwide
23   question.

24       Additionally, proof of the other elements of the exception in
25   subsection (3)(b), if necessary, will also rely on common evidence.
26   The issue of whether the deductions were for the drivers' benefit
27   or were instead deducted for the purpose of shifting to the
28   employees defendant's ordinary business expenses, including the

25 - OPINION & ORDER

cost of paying its workers' compensation premiums, will be decided for the class. And, given that defendant's method of recording deductions on the drivers' "settlement statements" appears to be uniform, the evidence regarding the recording of deductions in the employer's books, will also be uniform and not individualized.

While the exact amounts deducted will likely vary from driver to driver, the common issues related to the O.R.S. 652.610 claim prevail over the individual ones. Additionally, the calculation of the amounts deducted for each individual driver, if necessary, will likely be fairly mechanical.

As for the O.R.S. 652.150 penalty wage claim, the claim requires proof that (1) the employee's employment was terminated, (2) the employee was not paid wages within the prescribed period of time after the termination, and (3) the employer's failure to timely pay the wages was willful. O.R.S. 652.150; see also O.R.S. 652.140 (establishing requirements regarding payment of wages upon termination).

This claim is predicated on the illegal deduction claim under O.R.S. 652.610. That is, any "wages" that defendant owed a driver upon termination under O.R.S. 652.150 would be solely because defendant had improperly made deductions from the driver's pay while the driver worked for defendant. Defendant argues that individualized evidence is necessary on this claim to prove, as for each driver, that (1) the employment was terminated, (2) defendant willfully failed to pay, (3) within one business day, (4) wages that were earned and unpaid at the time of termination.

I agree with plaintiff that the claim will be proved with largely common evidence. The subclass proposed by plaintiffs is

26 - OPINION & ORDER

defined as drivers whose employment with defendant was terminated. Thus, other than showing that members of the subclass were employees and not independent contractors, an issue decided on common evidence as discussed above, no separate, additional evidence regarding termination is required. And, given that any late payment of wages depends on plaintiffs prevailing on the O.R.S. 652.610 claim, the element of the claim regarding wages being earned and unpaid will have already been determined, based on common evidence, with no additional evidence necessary. The willfulness of defendant also appears to be a subclass-wide determination based on common evidence.

While the damages inquiry will be individualized, this will likely be a fairly straightforward computation once liability is established and the amount of deductions calculated. Overall, the common issues on the O.R.S. 652.150 claim predominate over the individual issues.

C.  Rescission/Unjust Enrichment Claims

The contours of these claims are a bit unclear. As described in the beginning of this Opinion, plaintiffs bring a claim for rescission based on their theory that the driver agreements are void as against public policy and thus unenforceable.

They also bring a separate claim for unjust enrichment/quantum meruit based on the theory that with the alleged misclassification of the drivers as independent contractors, defendant improperly required the drivers to pay defendant's ordinary business expenses (meaning, the sums defendant was allegedly not authorized to deduct from the monies it paid to the drivers). As a result, plaintiffs contend they are entitled to restitution of all the business

27 - OPINION & ORDER

expenses they were required by defendant to bear, and for the fair value of the services they provided.

On the unjust enrichment/quantum meruit claim, plaintiffs have to show (1) a benefit conferred by the plaintiffs; (2) awareness by the recipient that a benefit has been received; and (3) under the circumstances it would be unjust to allow retention of the benefit without requiring the recipient to pay for it. Summer Oaks Ltd. P'ship v. McGinley, 183 Or. App. 645, 654, 55 P.3d 1100, 1104 (2002) (unjust enrichment); see also L.H. Morris Elec., Inc. v. Hyundai Semiconductor Am., Inc., 203 Or. App. 54, 66, 125 P.3d 1, 8 (2005) ("Quantum meruit is a form of restitution where the plaintiff has performed services for defendant and seeks to recover their fair value. The law, in appropriate situations, will imply a quasi-contract. It is not consensual. It is not a contract. It is a remedial device which the law affords to accomplish justice and prevent unjust enrichment.") (internal quotation omitted).

Because the claim is apparently based on the alleged inappropriateness of the deductions from earnings uniformly taken by defendant as to each of its drivers, common evidence will be used to prove whether the act of taking those deductions conferred a benefit on defendant by the drivers, whether defendant was aware that it received a benefit, and whether under the circumstances, defendant should retain the benefit without paying the drivers for that benefit.

A quasi-contract claim such as this, however, will not lie if an express contract covering the same situation exists between the parties. Glacier Optical, Inc. v. Optique du Monde, Ltd., No. CV-91-985-FR, 1992 WL 176149, at *6 (D. Or. July 10, 1992); see also

28 - OPINION & ORDER

1    Ken Hood Constr. v. Pacific Coast Constr., Inc., 201 Or. App. 568,

2    580 n.7, 120 P.3d 6, 13 n.7 (2005) (concluding that the parties had

3    a contract and thus, not addressing quantum meruit claim because

4    quantum meruit and breach of contract were mutually exclusive

5    theories).    Thus, plaintiffs cannot prevail on the unjust

6    enrichment/quantum meruit claim without providing a basis for

7    concluding that the driver contracts, or perhaps portions of those

8    contracts, are inapplicable for some reason.    In the briefing,

9    plaintiffs make various suggestions that the driver contracts are

10   unenforceable as contracts of adhesion, that they are unenforceable

11   because they are void as violating public policy, or that they are

12   simply inapplicable upon a determination that plaintiffs were

13   employees and not independent contractors.

14       Regardless of the theory plaintiffs rely on, the evidence will

15   be common because of defendant's uniform treatment of its drivers.

16   All of the driver service contracts will be adjudged in the same

17   fashion on this issue.    Thus, common issues predominate in the

18   unjust enrichment/quantum meruit claim.

19       The rescission claim is somewhat perplexing.    The goal of

20   rescission is to restore the parties to the status quo ante.    State

21   v. Pettit, 73 Or. App. 510, 513, 698 P.2d 1049, 1051 (1985); see

22   also White v. Burt, 114 Or. App. 476, 479, 835 P.2d 946, 948 (1992)

23   (permissibility of rescission generally depends on the restoration

24   of the status quo ante).

25       During oral argument on the motion, I queried plaintiffs'

26   counsel about the outcome of plaintiffs' rescission claim.    I asked

27   plaintiffs' counsel what a return to the status quo means in this

28   case.    Plaintiffs' counsel responded that rescinding the contract

29 - OPINION & ORDER

1   and returning to the status quo would require examining the work
2   the drivers did for defendant and the amounts defendant paid them,
3   then determining the fair market value of the services that were
4   provided, and then computing the difference.

5        I am not convinced that rescinding the contract will place
6   plaintiffs in the position of obtaining a payment of money from
7   defendant based on a theory that as employees they are now owed
8   something that they did not receive as independent contractors.
9   But, whether plaintiffs persist in this approach as described in
10  oral argument, or instead, pursue the severance of a portion of the
11  contract that they contend is illegal, it is of little importance
12  to the instant motion.  In either case, the evidence in support of
13  rescission will be common evidence because it involves defendant's
14  characterization of the drivers as independent contractors rather
15  than employees.  Any differences among the putative class members
16  is likely to be immaterial.

17       Finally, as to the superiority of maintaining the case as a
18  class action over individual claims, I agree with plaintiffs that
19  a class action is superior given the increased expenses,
20  duplication of discovery, and potential for individual actions
21  should each driver have to pursue his or her claims individually.
22  The efficiencies gained by use of a class action for all common
23  questions outweigh any burden created by adjudication of each
24  driver's damages.  Overall, all parties will benefit by reducing
25  litigation expenses.  And, as is typical of class actions, class
26  certification will protect the rights of class members, most of
27  whom would otherwise be precluded from pursuing claims for
28  relatively small awards.  Additionally, as plaintiffs note, the

30 - OPINION & ORDER

class in this case is a well-defined group of individuals. Defendant also possesses contact information for the class members. The size of the class is relatively small.  A class action is warranted in this case.

CONCLUSION

Plaintiffs' motion for class certification (#81) is granted.

IT IS SO ORDERED.

Dated this __30th__ day of September__, 2009.


___/s/ Dennis James Hubel_____
Dennis James Hubel
United States Magistrate Judge

31 - OPINION & ORDER